UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
VAN HUA,                              )  No. C08-0010RSL
                                      )
                Plaintiff, )
     v.                              )  ORDER GRANTING IN PART
                                      )  DEFENDANTS' MOTION FOR
BOEING CORPORATION, *et al.*,         )  SUMMARY JUDGMENT
                                      )
                Defendants. )
_____)

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 42. Plaintiff asserts discrimination, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination ("WLAD") against his supervisor, defendant Brad Bradley, and his employer, defendant Boeing Corporation. Plaintiff also alleges that Boeing negligently supervised and/or hired Bradley, causing plaintiff injury. Defendants seek judgment as a matter of law on all of plaintiff's claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of "the pleadings, the discovery and disclosure

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

materials on file, and any affidavits" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

---

[1] The Court has not considered unsupported conclusory allegations (such as "[p]laintiff was subjected to ongoing harassment and ridicule by [d]efendant Bradley on a consistent basis" (Motion at 2)) or statements for which the witness has not identified an admissible source for his knowledge (such as "no other employees['] hours were [cut]" (Hua Decl. at ¶ 3)). Nor has the Court combed through the hundreds of pages of deposition testimony and exhibits submitted by plaintiff to determine whether there is any supporting, but uncited, evidence in the record. Entire sections of plaintiff's statement of facts are devoid of any record citations (see Opposition at 9-12 (Sections E and F)), and key arguments are asserted without any supporting references (see Opposition at 8 ("Plaintiff's work orders were often changed and the hours cut. No other employee that has testified in this matter has ever had the allotted hours on a work order cut.")). The production of a stack of uncited documents is insufficient to oppose a motion for summary judgment: the Court need not, and will not, "scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). See also White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").
    The Court has, however, considered the declaration and exhibits submitted by plaintiff on January 27, 2009, hours after the filing deadline.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT        -2-

## A. DISCRIMINATION

Because plaintiff has not identified any explicit statement or conduct from which one could conclude that Mr. Hua's race or national origin motivated defendants' behavior in this case,[2] his state and federal claims of intentional discrimination rely on inferences and are subject to the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004) (noting alternative means by which discriminatory intent can be shown); Dumont v. City of Seattle, __ Wn. App. __, 200 P.3d 764, 769 (2009) (applying McDonnell Douglas analysis to WLAD claim). In order to raise an inference of discrimination, plaintiff must show that (1) he is a member of one or more protected classes, (2) he was satisfactorily performing his job, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not in the protected class were treated more favorably. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993) (citing McDonnell Douglas, 411 U.S. at 802). Plaintiff's initial burden is to show that the defendants' conduct, if left unexplained, gives rise to an inference that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978) (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977)). If the elements of the *prima facie* showing are satisfied, plaintiff is entitled to a presumption that the employer unlawfully discriminated against him. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

It is undisputed that plaintiff is a member of a protected class. The Court is also willing to assume that he is satisfactorily performing his job and that he was qualified for the lead position vacated by Jerry Gilbert in the spring of 2006. Most of the injuries alleged by

---

[2] Mr. Hua and his co-workers are at a loss to understand why Mr. Bradley criticizes Mr. Hua's performance and have simply concluded that it must be because of his protected characteristics.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT        -3-

plaintiff do not rise to the level of an "adverse employment action," however.[3] Laws targeting intentional discrimination in employment should not be used to create or enforce a "general civility code for the American workplace." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). There is no prohibition on cranky, demanding, or annoying bosses. Nor is there a duty to provide employees with an enjoyable work experience or to protect them from unpleasant interactions. Rather, the law bars intentional discrimination in the terms and conditions of employment. Defendant Bradley's random comments, criticisms of plaintiff's work, and demanding style as an interviewer/supervisor (items (1), (2), (4), (5), and (6) mentioned in footnote 3) did not "materially affect the compensation, terms, conditions, or privileges of employment" (Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008)) and did not, therefore, constitute adverse employment actions.

The only actions that could possibly satisfy the third element of the *prima facie* case are the alleged failure to promote in March 2006 and the allegedly disparate assignment and recording of work orders. The facts regarding plaintiff's failure to promote claim are in dispute. Both plaintiff and his co-worker, Robert Fortin, state that (a) defendant Bradley announced that the position of 2nd shift team leader was open and called for applications and (b) the 2nd shift mechanics talked about the position, but only plaintiff was interested in applying. Hua Decl. at ¶ 2; Fortin Decl. at ¶ 2. Defendants deny that the position was open for applications at any point after 2004. Bradley Decl. at ¶ 6. The Court is unable to decide this factual issue on the record

---

[3] Interspersed between broad allegations of harassment, mistreatment, and ridicule, plaintiff describes only a handful of events in his opposition to defendants' motion for summary judgment. Plaintiff alleges that defendant Bradley: (1) commented that plaintiff looks "too clean to be a mechanic;" (2) rated plaintiff lower during an interview process than did the other two interviewers (plaintiff does not assert a failure to promote claim based on this process); (3) terminated a 2006 job opening when it became clear that only plaintiff was interested in the position; (4) accused plaintiff of failing to put air in the tire of a truck; (5) accused plaintiff of cutting a cable on a battery; (6) accused plaintiff of spilling antifreeze in his work area; (7) provided plaintiff with less time to complete projects than his Caucasian co-workers; and (8) excluded plaintiff from the "standard practice" of shifting excess time from one assignment to another.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -4-

presented.[4] If the position were posted and plaintiff applied, defendants' subsequent withdrawal of the posting after realizing that plaintiff was the only applicant could support an inference of discrimination.[5]

Plaintiff also alleges that defendants have established unrealistic time restrictions on preventative maintenance projects, that plaintiff is given less time than his Caucasian co-workers to accomplish certain tasks, and that he is not permitted to shift excess time to other projects or activities as his co-workers do. At this point in the litigation, plaintiff has the burden of presenting evidence to support his claims and cannot simply rely on allegations, speculation, and unsupported conclusions to ward off summary judgment. It is clear that most, if not all, of the 2nd shift mechanics believe that the time allotted for certain preventative maintenance work is insufficient. This problem is universal: plaintiff is not treated any differently in this respect than his Caucasian co-workers. See, e.g., Fortin Dep. Tr. at 45. If, however, plaintiff's work assignments were altered so that he were given less than the normal allotted time in which to perform tasks or was denied avenues of relief available to his co-workers, a *prima facie* case of discrimination may exist. The question, then, is whether plaintiff has raised a genuine issue of material fact regarding these two practices.

Plaintiff asserts that his "work orders were often changed and the hours cut" and cites vaguely to "work orders that have been assigned to him with times changed." Opposition at 8 and 16. Although no record citations are provided in support of these allegations, the Court notes that a few work orders are attached to the deposition transcripts of Leslie Morgan and Kim

---

[4] Contrary to defendants' argument in reply, plaintiff's affidavit is not necessarily inconsistent with his deposition testimony and has, therefore, been considered.

[5] Although the fourth element of the McDonnell Douglas analysis is traditionally stated as "after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications" (411 U.S. at 802), the Supreme Court recognized that courts must be flexible when formulating the specific elements to reflect the wide variation in factual situations. 411 U.S. at 802 n.13.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT         -5-

Engstfeld. Neither the orders nor the related testimony supports plaintiff's claim of discriminatory treatment, however. The only work order specifically assigned to plaintiff did not involve a reduction in the allotted time and was completed in the 2.5 hours provided. Hammack Decl., Ex. F(4). Two additional copies of that same work order (5805743) are included in the record: although those copies have handwritten changes to the time allotted for the maintenance work, they apparently were run five days earlier and there is no indication that they were assigned to a mechanic. Hammack Decl., Exs. F(3) and G(1). The fourth work order (5805838) has its time cut, but again there is no indication that it was assigned to a mechanic or completed. Hammack Decl., Ex. F(2). Mr. Morgan, the 1st shift team leader, states that the work order printouts had to be changed by hand after management altered the allotted time for a particular type of job but before the new standards could be programmed into the computerized work order system. Morgan Dep. Tr. at 99-100. Generally, the time changes were made before a mechanic was assigned to the task. Morgan Dep. Tr. at 116. There is nothing about the process described by Mr. Morgan or the work orders provided that suggests that plaintiff was given less time in which to accomplish certain tasks than his Caucasian co-workers. He has therefore failed to satisfy the fourth element of the *prima facie* case.

The only other adverse employment action identified by plaintiff is that he, unlike his co-workers, was not permitted to use certain tricks to cover hours spent on job assignments in excess of the time allotted for the task. Plaintiff asserts that it was standard practice for mechanics to obtain a planned job through dispatch and/or to attribute excess hours to clean up but that defendant Bradley "refused to allow [p]laintiff to do the same." Opposition at 8. Although there is evidence that some of the 2nd shift mechanics did avail themselves of planned jobs and creative reporting to make up lost hours (see King Dep. Tr. at 24), there is no evidence that this practice was sanctioned by defendants. Management had standardized the amount of time allotted to perform preventative maintenance tasks: it would be counterproductive to allow mechanics to avoid those standards by attributing excess time to other tasks. The only

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -6-

1 reasonable inference from the record is that defendants did not know of, and certainly did not
2 approve, the alleged "standard practice" when this case was filed in November 2007. Plaintiff
3 did not mention the practice in his complaint. When it became apparent during the course of this
4 litigation that some of the mechanics were creatively recording their hours, defendants took
5 affirmative steps to prevent some of the underlying practices that were subject to abuse by
6 restricting the manner in which planned jobs were assigned and specifically directing all
7 mechanics to charge their time accurately to tasks they had actually performed. There is no
8 evidence to support plaintiff's bald assertion that these restrictions and admonitions are being
9 enforced only against him. Opposition at 9. Having failed to show that similarly situated
10 employees who were not in the protected class were treated more favorably, plaintiff has not
11 raised an inference of discrimination as to the recording of hours.

12 As discussed above, plaintiff has presented a *prima facie* case of discrimination
13 regarding his failure to promote claim (or at least he has raised a genuine issue of material fact
14 that precludes summary judgment). The burden therefore shifts to defendants "to articulate a
15 legitimate nondiscriminatory reason for its employment decision." Wallis, 26 F.3d at 889. In
16 reply, defendants assert that, even if there were a position for plaintiff to fill in 2006, defendant
17 Bradley made a non-discriminatory business decision to redirect the funding so that he could
18 hire a fleet manager. Plaintiff did not have an opportunity to respond to this argument. Because
19 the record consists of little more than competing declarations regarding defendant Bradley's
20 statements and intent, defendants' motion for summary judgment regarding the failure to
21 promote claim is DENIED.

**B. HOSTILE WORK ENVIRONMENT**

23 An employer who creates or tolerates a racially abusive work environment may, in
24 some circumstances, alter the conditions of employment for minority employees in violation of
25 the WLAD and Title VII. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-16
26 (2002); DeWater v. State, 130 Wn.2d 128, 135 (1996); Manatt v. Bank of Am., NA, 339 F.3d

792, 798 (9th Cir. 2003). To prevail on his hostile work environment claim, plaintiff must prove that (1) he was subjected to verbal or physical conduct of a racial nature or related to his national origin; (2) the conduct was unwelcome; and (3) the conduct was so severe or pervasive as to alter the conditions of employment and create an abusive environment. Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998).[6] "In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Nat'l R.R. Passenger Corp., 536 U.S. at 116 (internal quotation marks and citation omitted).

Plaintiff argues that defendant Bradley's constant criticism of his work, the impossibly ambitious work schedules imposed on him, and the denial of the 2006 promotion have made his working conditions intolerable. Plaintiff has not alleged any comment or action that is related to, or even touching on, his race or national origin. He cannot, therefore, satisfy the first element of his hostile work environment claim. Caldwell v. State of Washington, 278 Fed. Appx. 773, 775-76 (9th Cir. 2008); Castillo v. Dominguez, 120 Fed. Appx. 54, 58 (9th Cir. 2005).

**C. RETALIATION**

To establish a *prima facie* case of retaliation, plaintiff must show that (1) he engaged in protected activity, (2) he suffered an adverse employment action,[7] and (3) there is a

---

[6] Under the WLAD, plaintiffs must also establish that the harassment can be imputed to his employer. See DeWater, 130 Wn.2d at 135.

[7] For purposes of a retaliation claim, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000). This definition of an adverse employment action is considerably broader than the one used when evaluating an intentional discrimination claim. Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 965 (9th Cir. 2004).

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -8-

causal link between the two. Wallis, 26 F.3d at 891. "Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (citations omitted). "Because Washington courts look to interpretations of federal law when analyzing retaliation claims, we . . . consider [plaintiff's] federal and state claims together." Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002) (citing Graves v. Dept. of Game, 76 Wn. App. 705 (1994)).

In his complaint, plaintiff alleges that defendant Bradley "refused to talk directly with plaintiff and instead appointed another employee to serve as a messenger for communication" after plaintiff lodged a complaint with Boeing and the EEOC. In response to defendants' motion for summary judgment, plaintiff did not provide a supporting affidavit and has failed to cite to any record evidence. Plaintiff cannot, at this stage of the litigation, rely on the allegations of his complaint or the unsupported argument of counsel. Having failed to support his "refusal to talk" allegation, defendants are entitled to summary judgment on this part of his retaliation claim.[8]

Plaintiff argues that defendant Boeing failed to act on an October 2007 request for transfer and that this failure to act was in retaliation for complaints he filed with Boeing's Human Resources Department in the spring of 2006 and with the EEOC in January 2007. The only evidence regarding this aspect of his retaliation claim is plaintiff's declaration, which states: "Around October 2007, I decided to put in for a transfer to try to get away from the stress and Mr. Bradley. I put the transfer in but never heard back from Boeing." Hua Decl. at ¶ 4.

---

[8] In addition, the lack of personal interaction between plaintiff and defendant Bradley at the start of plaintiff's shift may not rise to the level of an adverse employment action even under the more lax retaliation standard. See Ray, 217 F.3d at 1241.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT             -9-

Plaintiff has failed to show that he suffered an adverse employment action or that Boeing's silence was causally connected to plaintiff's protected activity. There is no evidence that Boeing denied the transfer or otherwise took an action that was affirmatively adverse to plaintiff. No details are provided regarding the position plaintiff sought, the application process, or Boeing's receipt/consideration of the application: because plaintiff ultimately decided that he did not, in fact, want a transfer, he never confirmed that his application had been received or pushed Boeing to a decision. Whether mere silence on the part of an employer in these circumstances is an adverse employment action is doubtful. More importantly, there is no evidence from which one could infer a causal link between plaintiff's complaints and Boeing's failure to respond to his request for transfer. There is no allegation that defendant Bradley was involved in the processing of the request to transfer. In fact, the Court has no idea who, if anyone, considered plaintiff's request, making it impossible to determine whether they were aware of plaintiff's complaints or whether it affected the processing of plaintiff's request. Nor does the length of time between the complaints and the failure to transfer (between 1.5 years and 9 months) raise an inference of retaliatory motive. Plaintiff has therefore failed to establish a *prima facie* case of retaliation.

### D. NEGLIGENT HIRING AND SUPERVISION

Plaintiff has abandoned his negligent hiring claim, instead arguing that Boeing is liable for defendant Bradley's discriminatory conduct because it failed to properly supervise him. Plaintiff's negligent supervision claim is based on the same facts that support his claim against Boeing for unlawful discrimination. It is therefore duplicative, and, under Washington law, must be dismissed. Francom v. Costco Wholesale Corp., 98 Wn. App. 845, 865-66 (2000).

In addition, even if the Court were to consider the negligent supervision claim on the merits, dismissal is appropriate. Assuming that defendant Bradley prevented plaintiff from becoming 2nd shift team leader because of plaintiff's race or national origin, plaintiff would still have to show that Boeing knew or should have known that defendant Bradley posed a risk to

employees in plaintiff's position. Niece v. Elmview Group Home, 131 Wn.2d 39, 48-49, 51-52 (1997). No evidence is offered in support of this claim: instead, plaintiff relies on counsel's unsupported argument that the risk was foreseeable because "several other employees had lodged complaints against [d]efendant Bradley with no corrective action taken." Opposition at 18. At this stage of the litigation, mere assertions are insufficient. Defendants have provided evidence that the two prior complaints involved disputes regarding absenteeism. They therefore are unrelated to the type of conduct alleged here and would not serve to put Boeing on notice that defendant Bradley had "dangerous tendencies" that required supervision. Niece, 131 Wn.2d at 52.

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part. There is a factual dispute regarding the posting and/or withdrawal of the 2nd shift team leader position in 2006 which precludes summary judgment as to that claim.[9] Plaintiff's other state and federal claims are legally or factual deficient and are hereby DISMISSED.

Dated this 17th day of April, 2009.

*(signature)*
Robert S. Lasnik
United States District Judge

---

[9] Because this issue was not properly joined during discovery (plaintiff's deposition testimony convinced defendants that his failure to promote claim involved an application made in 2004), the Court will reopen discovery for a brief period to allow both sides to ascertain what really happened in 2006. A revised case management schedule shall be issued.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -11-